IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| The Sater Design Collection, Inc., | ) | C/A No. 4:08-4101-TLW-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| Wingard Properties, Inc.; James T. | ) | |
| Wingard; Deborah Wingard; The | ) | |
| Lowrey Group, Inc.; and Robert C. | ) | |
| Lowrey, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

On December 22, 2008, plaintiff Sater Design Collection, Inc. ("Sater") filed suit against defendants Wingard Properties, Inc. ("Wingard"); Wingard's president, James T. Wingard; and Wingard's vice-president, Deborah Wingard ("Individual Wingard Defendants"); alleging all infringed several of its copyrighted architectural works   house plans numbered 6910 and 6746   by using those plans in designing and building several homes in the Grande Dunes area of Myrtle Beach, South Carolina. [Entry #1]. In June 2009, Sater filed an amended complaint, adding as defendants Ray Covington; architectural firm The Lowrey Group, Inc. ("TLG"); TLG's president, Robert C. Lowrey ("Lowrey"); and owners of one of the homes at issue, Steve and Jennifer Schwartz. [Entry #34]. In September 2009, Sater voluntarily dismissed defendant Covington. [Entry #70]. On February 19, 2010, Sater amended its complaint to include additional infringement claims regarding other copyrighted architectural works:   house plans 6653, and its derivatives 6721, 6719, and 6756. [Entry #92]. On March 30, 2010, Sater voluntarily

dismissed defendants Steve and Jennifer Schwartz. [Entry #99]. Because corporate parties can not proceed pro se, the court granted Sater's motion to strike the answer of TLG [Entry #115], and the Clerk of Court entered default as to TLG on July 12, 2010 [Entry #116].

This matter is before the court on three motions: 1) Sater's motion for summary judgment as to all claims [Entry #129]; 2) the motion for summary judgment of the individual Wingard Defendants, seeking dismissal of all claims brought against them in their individual capacities [Entry #127]; and 3) Sater's motion for default judgment as to defendant TLG [Entry #128]. All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(e), DSC. Because these motions are dispositive, this Report and Recommendation is entered for review by the district judge.

I.    Relevant Factual Background

Sater is an architectural design firm that, among other things, creates and sells custom and pre-drawn house plans. It alleges that six of its copyrighted plans were infringed by Defendants in designing, constructing, and participating in the construction of homes in the Grande Dunes development. Sater claims that Wingard built numerous residences that improperly used Sater Plans 6910, 6653, 6721, 6653, 6719, 6756, and 6746. Sater also brings infringement claims against the Individual Wingard Defendants, alleging they were contributorily or vicariously liable for Wingard's allegedly infringing actions. Sater alleges TLG violated copyright law by producing drawings for the

2

Wingard-built homes that were based in large part on Sater's copyrighted works. Sater claims that Lowrey is contributorily or vicariously liable as TLG's president.

Sater avers that all Wingard and Lowrey Defendants infringed on Plan 6910 in planning and building one or more Grande Dune residences. 2d Am. Compl. ¶ 14 & ex. 3. Sater also claims that Defendants infringed on Plan 6653 and its derivative 6721 in planning and constructing three or more Grande Dune residences, including homes on Members Club, lot 176; Riviera, lot 49; Members Club, lot 25; and Bal Harbor, lot 39. *See* 2d Am. Compl. ¶ 41 & ex. 9. Additionally, Sater claims all Defendants infringed on Plan 6653 and its derivatives 6719 and 6756 in constructing eight or more Grande Dunes residences, including those at Calais, lots 15, 22, 26, 28; Cadiz, lots 2, 12; and Capri, lot 28. *See* 2d Am. Compl. ¶ 55 & ex. 12. Finally, Sater claims the Wingard Defendants infringed on Plan 6746 in planning and building a home at Plantation Point, lot 10, Grande Dunes. 2d Am Compl. ¶ 27 & ex. 6.

II.     Applicable Legal Standards

A.     Summary Judgment

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 23 (1986). If a

movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; " or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

B.     Default Judgment

When a defendant does not answer or otherwise respond to a plaintiff's complaint, or when a defendant's answer is stricken, upon motion of the plaintiff, default is entered.

4

In considering a motion for default judgment, the court examines a plaintiff's claims under the applicable statutory or common-law scheme to determine whether plaintiff has set forth claims as to which relief can be granted pursuant to the standard of Fed. R. Civ. P. 12(b)(6). *See generally GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n. 3 (E.D. Va. 2003) (considering facts and evaluating plaintiff's claims prior to entry of default judgment in copyright action). If plaintiff's causes of action satisfy this standard, the court may determine that default judgment is appropriate and may consider the plaintiff's request for damages.

III.    Discussion

    A.    Sater's Motion for Summary Judgment [Entry #129]

Sater brings several counts of copyright infringement pursuant to the Copyright Act, codified at 17 U.S.C. § 101, et seq., separating the counts according to the house plans infringed and the Defendants who allegedly infringed. "Architectural works," such as house plans, are copyrightable works of authorship that are listed in the Copyright Act. *See* 17 U.S.C. § 102(a)(8). To establish an infringement cause of action, "two elements must be proven: (1) ownership of a valid copyright, and (2) copying of the constituent elements of the work that are original." *Feist Publ'n, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991) (internal citations omitted).

    1.    Ownership of a Valid Copyright

Copyright protection requires that the thing being copyrighted is original. *See Feist*, 499 U.S. at 346. A certificate of copyright from the United States Copyright Office

(USCO) is "is prima facie proof of the validity of plaintiff's copyright, including the existence of the elements of originality and fixation." *M. Kramer Mfg. Co. v. Andrews*, 783 F.2d 421, 434 (4th Cir. 1986).

In support of its claimed ownership of valid copyrights for each plan at issue, Sater presented the sworn testimony of its president, Dan F. Sater II, as well as copies of certifications of registrations of each plan with the USCO. *See* Sater Aff. [Entry #129-2] at ¶¶ 6, 8, exs. A, B (Sater Plan 6910); ¶¶ 15, 17, exs. D, E (Sater Plan 6746); ¶¶ 24  26, exs. I, J, K (Sater Plan 6653 and its derivative 6721); ¶¶ 35  38, exs. G, O, P (Sater Plan 6653 and its derivatives 6719, 6756). Further, Defendants[1] have not challenged Sater's ownership of a valid copyright in relation to the various house plans at issue. *See*

_____

[1] In discussing Sater's motion for summary judgment, reference to "Defendants," unless otherwise noted refers to the Wingard Defendants because they filed a legal memorandum in response to Sater's motion. The remaining defendants are The Lowrey Group, Inc. and Robert C. Lowrey. Robert Lowrey, proceeding pro se, did not submit a legal memorandum, per se; however, he did submit his affidavit in opposition to Sater's motion. *See* Entry #142. Because Mr. Lowrey did not supply specific legal argument or detailed factual analysis of each legal element of Sater's infringement claims and focused his factual filing on his lack of knowledge regarding where the Wingard Defendants obtained the drawings at issue, Sater proposes that the court grant summary judgment as to his liability without further analysis. Pl.'s Reply to Lowrey Response at 3  4 [Entry #155]. The court is to liberally construe submissions by pro se parties. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972). The undersigned recommends the court decline Sater's request to summarily find Lowrey liable. In his answer, Lowrey questioned whether there were similarities between Sater's plans and those on which he worked with Wingard Properties. *See* Lowrey's Answer [Entry #53] (noting "not aware of any similarities to or infringements of" Sater's plans). For reasons discussed herein, the undersigned recommends Sater's motion for summary judgment as to Lowrey be denied for the same reasons set forth herein as to the Wingard Defendants. Sater's claims against Lowrey's architectural firm, Defendant TLG, are discussed below in connection to Sater's motion for default judgment against TLG. [Entry # 128].

Wingard Defs.' Resp. to Pl.'s Mot. at 2 [Entry #140] ("[T]he Wingard Defendants have no basis to dispute the ownership of the copyrights on the Plaintiff's plans at issue, and therefore concede the issue of ownership."); *see generally* Def. Lowrey's Aff. and Exs. [Entry #142] (providing no argument or evidence as to ownership issue). Accordingly, the court finds that Sater has established its prima facie case as to the first of the two elements of an infringement claim   ownership of valid copyrights of original works.

　　　　　2.　　Copying of Constituent Elements of the Work that Are Original

　　　　　To establish an infringement claim, Sater must also satisfy the second element of an infringement action; i.e., that Defendants copied the constituent elements of the designs at issue that are original. This element of copyright infringement is commonly referred to as "copying" and may be proved by direct or circumstantial evidence. *Donald Frederick Evans & Assoc. v. Cont'l Homes, Inc.*, 785 F.2d 897, 904 (11th Cir. 1986). If "there is clear proof of actual copying by the defendants, that is the end of the case. *M. Kramer Mfg.*, 783 F.2d at 445. However, because copyright owners often cannot provide direct evidence of copying, this element is typically "established by proof that the defendant had access to the plaintiff's work and produced a work that is substantially similar to the plaintiff's work." *Id.* Once a copyright holder provides such proof of copying, it has raised a "presumption of copying." *Keeler Brass Co. v. Cont'l Brass Co.*, 862 F.2d 1063, 1065 (4th Cir. 1988). A defendant may then provide evidence to rebut the presumption of copying. *Id.* If a defendant rebuts the presumption of copying, "the function of the fact finder then is to weigh all the evidence, keeping in mind that the

plaintiff has the ultimate burden of persuading it that the defendant copied the material."
*Id.*

> a.  Plaintiff Has Not Provided Undisputed Direct Evidence of Copying to Support Granting Summary Judgment.

Here, Sater argues it has sufficient direct evidence of copying to permit the court to find Defendants "copied" the plans at issue and to grant summary judgment for Sater as to copyright infringement liability.  Pl.'s Mem. at 8 10.  Citing *M. Kramer Manufacturing*, 783 F.2d at 445, Sater argues that because it has direct evidence of copying, the court need not consider whether the copyrighted works and the allegedly infringing plans are "substantially similar."  Pl.'s Mem. at 8 10.  Although Sater suggests it should be granted summary judgment as to all of the plans at issue "on the basis of direct copying alone" (*id.* at 12), it proffers direct evidence of copying as to only as to Plan 6746.  *See id.* at 9 10.

Sater offers as direct evidence the affidavit of former defendant Steve Schwartz, who owned one of the homes Wingard built allegedly using one of Sater's copyrighted plans.  Sater argues that Dr. Schwartz "admitted that the 6746 plan was the basis for the plan that was used to design and construct" the allegedly infringing home. Dr. Schwartz testified that Sater's Plan 6746 "has the exact floor plan, picture of the front elevation and square footage of each of the floors of the advertisement that my wife and I were shown at Mr. Wingard's office prior to the design for our home being created."  Pl.'s Mem. at 9, *citing* Schwartz Aff. ¶ 4 [Entry #129-1; Entry #129-3].

Sater argues that this affidavit testimony and Dr. Schwartz's deposition testimony in which he called Sater Plan 6746 the "template" for plans for his home provide clear direct evidence of Defendants' copying of Plan 6746. Sater offers no direct evidence or specific argument that it has direct evidence to establish the element of copying as to the other plans at issue   Plans 6910, 6653, 6721, 6719, or 6756.

In response, Defendants argue that Dr. Schwartz's affidavit testimony regarding the meeting at Mr. Wingard's office when he and his wife were presented house plans is inadmissible hearsay because Dr. Schwartz testified at his deposition that his wife attended that meeting, but he did not. Wingard Defs.' Mem. at 2  3 (*citing* Dep. of Steven Schwartz, at 31:2  13 [Entry #140-1]. They argue that, at best, Dr. Schwartz has given conflicting testimony, creating genuine issues of fact that preclude summary judgment. Further, Defendants point to deposition testimony in which Defendant James Wingard indicated that Dr. Schwartz made determinations regarding the design of his home. Wingard Defs.' Mem. at 4 (*citing* Dep. of James Wingard, 81:1  84:20 [Entry #140-2]). Defendants argue that these competing facts preclude summary judgment on Sater's claim it has proved copying of Plan 6746 by direct evidence. On reply, Sater argues that Defendants mischaracterize Dr. Schwartz's deposition testimony and that no issue of fact exists.

The court agrees with Defendants. Sater has not provided uncontroverted direct evidence that Defendants copied Plan 6746. At best, Sater has proffered testimony of such copying that is contradicted by other record evidence. For the remaining plans at

9

issue, Sater has offered no direct evidence that satisfies its burden of showing Defendants copied its copyrighted works. The undersigned recommends finding Sater has not established its right to relief as a matter of law pursuant to direct evidence of copying.[2]

> b.     Plaintiff Has Not Provided Sufficient Undisputed Indirect Evidence of Copying to Merit Summary Judgment.

Sater also argues that it has set forth sufficient undisputed indirect evidence that Defendants copied each of its plans at issue.  *See* Pl.'s Mem. at 10 13.  To establish infringement through indirect, circumstantial evidence, Sater must prove the following: 1) that Defendants had access to the copyrighted works; and 2) that Defendants' works are "substantially similar" to Sater's copyrighted plans.  If Sater presents undisputed indirect evidence of access and substantial similarity, it creates a rebuttable presumption that Defendants infringed. Defendants then have the opportunity to rebut that presumption. *See generally Keeler Brass*, 862 F.2d at 1065 (noting plaintiff that shows alleged copier had access to protected material and that protected material and alleged copy are substantially similar creates rebuttable presumption of copying).

_____

[2]  Because Plaintiff has not provided undisputed direct evidence of copying, the court need not consider Sater's argument that, in the face of direct evidence of copying, there is never a need for the fact-finder to consider whether a copyrighted work is "substantially similar" to the allegedly infringing work. *See* Pl.'s Mem. at 8 9. *Cf. Sater Design Collect., Inc. v. Waccamaw Constr., Inc.*, 4:08-4133-TLW, Entry #122 at 9 13 (D.S.C. Feb. 14, 2011) (discussing need for consideration of substantial similarity even in face of direct evidence of copying).  In considering indirect evidence of infringement, determining such substantial similarity is unquestionably part of the analysis. *See Keeler Brass Co.*, 862 F.2d at 1065 (noting plaintiff may establish rebuttable presumption of the copying element by showing defendant had access to the copyrighted work and that the allegedly infringing work and the protected work are substantially similar).

10

i.    Access

To prove access, Sater must show that Defendants had "reasonable opportunity to view" or "opportunity to copy" the copyrighted works at issue.  Pl.'s Mem. at 11 (*quoting* 3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 13.01[A] & n.5, at 13 15, 13 16.  Sater points to record evidence that the Wingard Defendants had access to the plans at issue because they purchased design books containing the plans.  *See* Pl.'s Mem. at 11 12; deposition testimony of Individual Wingard Defs., exs. 5, 6 (regarding Wingards' purchasing books containing plans) [Entry #130-4, #130-5]; Robert Lowrey Dep. at 61 (agreeing all plans at issue in litigation found in "Luxury Book" ordered by Defendants) [Entry #130-3]).  The Wingard Defendants do not dispute that they had access to design books that contained Sater's plans at issue in this matter, but they provide the caveat that Deborah Wingard testified that she purchased the books to assist in the interior-design portion of the business. Wingard Defs.' Mem. at 4 (*citing* D. Wingard Dep. at 10 [Entry #140-3].

The undersigned recommends finding Sater has established that Defendants had access to the plans at issue, thereby satisfying the first of two elements required to establish a presumption of copying using indirect evidence.  That does not end the analysis, however.  Sater satisfies the requirements of the copying presumption only if it also demonstrates substantial similarity between the protected plans at issue and the accused works of Defendants.

11

ii.     Substantial Similarity

Sater argues that it is has provided sufficient indirect evidence of infringement to prevail on summary judgment because the homes at issue are "substantially similar" to its plans.  Pl.'s Mem. at 12.  Sater acknowledges that the question of whether allegedly infringing material is substantially similar to protected works is customarily one of fact. *Id.*  Nonetheless, Sater argues that summary judgment is appropriate when the "degree of substantial similarity is overwhelming."  *Id*. (*citing HRH Architects, Inc. v. Lansing*, 1:08-1479-RLV, 2009 WL 1421217, *6 (N.D. Ga. Apr. 22, 2009).  Sater submits that an "overall comparison of the two works" will determine whether the works are substantially similar in this context.  Pl.'s Mem. at 10 (*citing Orig. Appalachian Artworks, Inc. v. Toy Loft, Inc.*, 684 F.2d 821, 829 (11th Cir. 1982); *Intervest Constr., Inc. v. Caterbury Estate Homes, Inc.,* 554 F.3d 914, 920 (11th Cir. 2008)).

Sater focuses on *Intervest Construction,* which provides that protection for architectural works derives from the "protected arrangement and coordination of spaces, elements, and building components, as well as the total selection and arrangement of those items."  Pl.'s Mem. at 10 (*citing Intervest Constr.*).  Sater also emphasizes that, when considering architectural works, the "totality of the selection and arrangement of spaces, elements and components must be compared" when determining substantial similarity.  *Id.*  Further, Sater urges that isolated dissimilarities between the works do not prevent it from showing substantial similarity.  *Id.* at 11 (*citing Sid & Marty Kroft Television Prods., Inc. v. McDonalds Corp.*, 562 F.2d 1157, 1166  77 (9th Cir. 1977)).

12

Sater concludes this portion of its argument by claiming that it has pointed out sufficient substantial similarities to satisfy its "lesser burden of similarity [that is permitted] where access is proven." Pl.'s Mem. at 13. "[G]iven the absence of almost any difference between the subject plans, a finding of copying based solely on a finding of striking similarity would also be appropriate on summary judgment here." *Id.*

Sater's memorandum does not include any detailed analysis of how the plans at issue are allegedly substantially similar. In the affidavit of its president, Sater offers some evidence of the similarities between the plans at issue and the homes. For example, he attaches a copy of Plan 6810 and a copy of the plan Defendants used to construct a home on Lot 38, Grande Dunes, testifying that he has compared those plans and "determined that the house and its design are infringements of the 6910." Sater Aff. ¶¶ 6, 10 [Entry #129-2]. Sater provides no further detailed comparison beyond President Sater's conclusions that each Plan has been infringed by Defendants' drawings and homes built using those designs.

In response, Defendants point out that, even if Sater establishes "substantial similarity," Defendants could then submit evidence to rebut the presumption of copying. Wingard Defs.' Mem. at 4. Focusing on substantial similarity, the Wingard Defendants agree with Sater's general citation of *Intervest Construction* for the proposition that, in considering architectural works, it is the arrangement and coordination of spaces, elements, and building components, as well as the total selection and arrangement of such items that may be protected. *Id.* at 4 (*citing Intervest Construction*, 554 F.3d 914).

Defendants do not agree with Sater's argument that the court should look to the similarities, not the differences, between works when considering substantial similarity. Wingard Defs.' Mem. at 6. Rather, Defendants argue that, the differences in the works must be considered, as they were in *Intervest Construction*. This is so, Defendants argue, because architectural works are largely considered to be compilations, which the Copyright Act defines as being "a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in a way that the resulting work as a whole constitutes an original work of authorship." 17 U.S.C. § 101. This, Defendants argue, makes copyright protection of a compilation "thin." Wingard Defs.' Mem. at 6 (*quoting Feist*, 499 U.S. 340)).

Defendants argue that review of the plans at issue reveals numerous dissimilarities, making the court unable to rule that Sater has established substantial similarity as a matter of law. Wingard Defs.' Mem. at 6 7. The *Intervest* court made numerous comparisons of details of the homes, including the bathroom sinks, and found the plans were not substantially similar. Defendants then devote several pages of their memorandum to providing a sample of dissimilarities from each set of plans. Wingard Defs.' Mem. at 7 12. They indicate that a line-by-line comparison would not be helpful at this stage, claiming that the comparisons are too fact-intensive and the differences too many to support summary judgment at this time. *Id.* at 12 & n.5.

The undersigned agrees with Defendants and recommends that the court deny summary judgment because Sater has not established "substantial similarity" between its

plans and the accused works as a matter of law. Sater argues that there is an "absence of almost any differences between the subject plans," making summary judgment appropriate because the works are substantially similar. Pl.'s Mem. at 13. The undersigned has reviewed the plans and the detailed comparison of the plans by the Wingard Defendants and recommends finding Sater has not proven "substantially similarity" as a matter of law. *See Keeler Brass*, 862 F.2d at 1065. This detailed factual analysis is one for the fact finder. Further, even if Sater established "substantial similarity" between the plans, Defendants would still have the opportunity to rebut the presumption of copying.

### 2.    Damages

Sater also seeks partial summary judgment as to damages against all Defendants. *See* Pl.'s Mem. at 13 24. The Copyright Act permits an aggrieved copyright owner to recover from the infringer either the copyright owner's actual damages and any profits of the infringer or statutory damages. *See* 17 U.S.C. § 504(a). Because the undersigned recommends finding Sater has not established liability at this summary judgment phase, the undersigned need not consider damages at this juncture. The undersigned recommends the court deny Sater's request for summary judgment as to damages.

3.      Defenses

Finally, Sater seeks summary judgment as to the Wingard Defendants' 20 affirmative defenses[3] to Sater's Second Amended Complaint.  Pl.'s Mem. at 24 34; *see* Answer to Pl.'s 2d Am. Compl. ("Answer") ¶¶ 22 75.  In their response to Sater's motion for summary judgment, the Wingard Defendants did not focus on this portion of Sater's motion, and Sater argues on reply that summary judgment should be granted as to the defenses Defendants did not specifically address.  Pl.'s Reply, at 2.  The undersigned considers these defenses in turn.

a.      Failure to State a Cause of Action

Defendants' second defense is that Sater failed to state a cause of action upon which relief may be granted as to the Wingard Defendants.  Answer, ¶¶ 22 23.  Sater asserts that it has sufficiently set forth a cause of action and summary judgment should be entered against the Wingard Defendants on this issue.  Pl.'s Mem. at 24 25.  Based on the undersigned's review of the case as discussed above, it agrees that Sater has set forth a cause of action sufficient to survive this challenge and recommends that Sater's request for summary judgment as to this defense be granted.

b.      Statute of Limitations, Statute of Repose, Doctrine of Laches

In their third defense, the Wingard Defendants aver that Sater's claims are barred by the applicable statute of limitations, statute of repose, and the doctrine of laches. Sater

---

[3]Although Sater calls Defendants' enumerated defenses "affirmative," Defendants do not so nominate them in their answer.

16

seeks summary judgment as to these issues.    Answer, ¶¶ 24 25.    The undersigned recommends Sater be awarded summary judgment as to these defenses.

The Copyright Act provides that provides that "[n]o civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued."  17 U.S.C. § 507(b). Through the affidavit of its president, Sater asserts that it first discovered the alleged infringing homes at Grande Dunes in May 2008. Sater Aff. ¶ 4 [Entry #129 2].  Sater filed this action in December 2008.  Other than setting out the statute-of-limitations defense in its answer, Defendants have not argued that these claims are statutorily barred.

Similarly, other than pleading laches and the statute of repose as defenses, Defendant has not submitted argument or evidence that Sater's claims would be barred by either.  Nowhere do Defendants point to any particular statute of repose.  Further, there is no evidence that Sater waited unnecessarily to permit the equitable doctrine of laches be invoked.  *See also Lyons P'ship, L.P. v. Morris Costumes, Inc.*, 243 F.3d 789, 798 (4th Cir. 2001) (finding equitable doctrine such as laches should not be applied to shorten the statutory limitations period Congress established for bringing claims under the Copyright Act).  Sater should receive summary judgment as to this defense.

           c.      Defenses that Sater's Copyrights are Invalid and/or Are Not Original Creations

The Wingard Defendants assert several defenses in their answer to Sater's Second Amended Complaint that relate to issues of validity and originality.  *See* Answer

17

[Entry #93].   In their Fourth Defense, the Wingard Defendants allege that the designs at issue are not sufficiently original to be entitled to copyright protection. Similarly, their Fifth Defense indicates the designs are commonly known and commonly used to such an extent that they lack a reasonable level of originality.  They claim in their Sixth Defense that few, if any elements in the works at issue are original to Sater and that such elements are not substantially similar to Defendants' works. Their Seventh Defense asserts that the elements of the designs at issue are "functional and/or common ideas of a general style, and therefore are not protected by copyright." In their Eighth Defense, Defendants aver that Sater's design is not entitled to copyright protection because of the "merger doctrine." Their Ninth Defense alleges that Sater's design is not entitled to copyright protection because of the "scenes à faire principle."  Their Tenth Defense alleges that the "ordinary observer" test does not apply to Sater's cause of action and that the "more discerning observer" test should be applied, under which no infringement exists. Their Twelfth Defense asserts that Sater's copyright registrations are "invalid, unenforceable and not capable of sustaining an infringement action." Their Fourteenth Defense alleges that Sater's "claims for infringement are barred to the extent plaintiff incorporated others' works in its alleged '6910,' 6746,' 6653,' 6721,' 6719,' and '6756' designs and did not provide names of such others as contributors to the work, or did not otherwise procure the prior consent of said others."  Sater seeks summary judgment on these defenses.  *See* Pl.'s Mem. at 27  28.

The undersigned notes that some of these are not affirmative defenses so much as attempts to point out defects in Sater's copyright infringement claim.  *See In re Rawson Food Serv., Inc.*, 846 F.2d 1343, 1349 (11th Cir. 1988) ("A defense which points out a defect in the plaintiff's prima facie case is not an affirmative defense."); *Tingley Sys., Inc. v. HealthLink, Inc.*, 509 F. Supp. 2d 1209, 1220 (M.D. Fla. 2007) (considering a similar set of defenses finding that such "defenses are essentially denials of the elements of [the plaintiff's] claims, rather than true 'affirmative defenses.'").  Because the undersigned does not recommend summary judgment be granted on the issue of liability, it also does not recommend summary judgment on these asserted defenses at this stage.

d.      Copyright Misuse

In their Thirteenth Defense, the Wingard Defendants aver that Sater's claim is barred by the doctrine of copyright misuse. A misuse of copyright defense ordinarily applies when a "copyright is being used in a manner violative of the public policy embodied in the grant of a copyright." *Lasercomb Am., Inc. v. Reynolds*, 911 F.2d 970, 978 (4th Cir. 1990).  It is "generally found in cases where the copyright owner has engaged in some form of anticompetitive behavior." *Thomas M. Gilbert Architects, P.C. v. Accent Builders and Developers, LLC*, 629 F. Supp. 2d 526, 536 (E.D. Va. 2008).  Defendants have asserted no arguments or evidence in support of copyright-misuse defense.  The undersigned recommends Sater be awarded summary judgment as to this defense.

e.     Independent Creation Defenses

Sater argues that several defenses relate to Defendants' position that the plans for the homes at issue were independently created by Defendants and do not infringe on Sater's protected works.  Their Eleventh Defense asserts that if Sater's design is entitled to any copyright protection, it "is that of a 'thin' copyright, infringement of which requires nearly verbatim copying or showing of supersubstantial similarity, neither of which exists as to Defendants' work." Answer ¶¶ 40  41.  Their Fifteenth Defense asserts that Defendants' work was the result of independent creation, meaning no cause of action against it exists. Similarly, their Sixteenth Defense, Seventeenth, Eighteenth, and Nineteenth Defenses relate to the issue of whether Defendants' works are substantially similar to the protectable elements of Sater's plans at issue.

Although Sater seeks summary judgment as to these defenses, its only argument is that they "are bald assertions lacking any factual or legal foundation."  Pl.'s Mem. at 30.  Regarding these defenses that focus on substantial similarity, the undersigned previously recommended that Sater's motion for summary judgment be denied as to that element of proving copyright infringement.  For those same reasons, the undersigned recommends Sater's request for summary judgment as to these defenses be denied as well.

With respect to independent creation, the undersigned recommends denying summary judgment as to this claim because Sater has not established entitlement to judgement as a matter of law on this point.  The undersigned notes, as well, that in the

20

Fourth Circuit, independent creation is not an affirmative defense for which the alleged infringer has the burden of persuasion. *Keeler Brass*, 862 F.2d at 1066.

### f.    Plaintiff Suffered No Damages

Sater seeks summary judgment with regard to the Wingard Defendants' Twentieth Defense, in which they aver that Sater suffered no damages as a result of their conduct. Because the undersigned recommends finding Sater has not established liability at the summary judgment phase, it recommends denying summary judgment as to any issues of damages, including the Twentieth Defense.

### g.    Innocent Infringement

In their Twenty-first Defense, the Wingard Defendants aver that their actions were not willful. Knowledge or intent is not an element of copyright infringement, so it need not be considered in determining liability under the Copyright Act. Whether infringers acted willfully becomes an issue in the event liability has been established and the plaintiff elects to pursue statutory damages. *See* 17 U.S.C. § 504(c)(2) (stating that an award of statutory damages can be reduced to a sum not less than $200 if the infringer proves and the court finds "that such infringer was not aware and had no reason to believe that his or her acts constituted an infringement of copyright"). It also may be relevant to the issue of attorneys' fees. *See Superior Form Builders v. Dan Chase Taxidermy Supply Co.*, 881 F. Supp. 1021, 1024 (E.D. Va. 1994). Accordingly, the undersigned recommends denying summary judgment as to this damages-related issue at this juncture.

B.     Individual Wingard Defendants' Motion for Summary Judgment as to Contributory and Vicarious Liability [Entry #127]

In addition to objecting to Sater's motion for summary judgment, the Individual Wingard Defendants move for summary judgment, claiming that Sater's claims against them individually should be dismissed as a matter of law.  *See* Individual Wingard Defs.' Mem. [Entry #127-1].  They argue that, even if any liability could attach as to Defendant Wingard Properties, Inc., there is no evidence that James T. Wingard or Deborah Wingard had any involvement in the design of the subject homes.

James T. Wingard is president of Defendant Wingard Properties, Inc.; Deborah Wingard is the vie-president.  Indiv. Wingard Defs.' Mem. at 2.  The Individual Wingard Defendants cite to Deborah Wingard's testimony that she was not involved in any manner in the design of the plans at issue.  *Id.* at 3 (*citing* Deborah Wingard Dep. 5:19 22 [Entry #127 5]).  They also cite to each of the plans at issue, noting that each of them was designed by Wingard Properties and that none of the plans indicate they were designed by James Wingard individually.  *Id.* at 2 3.  Because there are no facts at issue regarding this point, these Defendants argue that they are entitled to judgment as a matter of law.  Other than citing a case that sets out the basic elements of copyright infringement, they cite no cases or other authority to support their legal argument that they cannot be found individually liable in this case.

Sater opposes the motion, arguing that the Individual Wingard Defendants are personally liable based on theories of contributory liability and/or vicarious liability.  *See*

22

Pl.'s Response at 2 [Entry #135]. Sater supplies deposition testimony in which James Wingard testified that he was involved in the development and creation of the allegedly infringing plans. *Id.* at 4  6. Sater argues Deborah Wingard may be contributorily liable for infringement because she ordered design books from Sater. *Id.* at 6.

Further, Sater argues that the Individual Wingard Defendants may be liable for vicarious infringement because they had the "right and ability to supervise" infringing activity, and they had a "direct financial interest" in the allegedly infringing activities. *Id.* A party can be vicariously liable under copyright laws, Sater argues, regardless of whether that party knows copyright ownership is being impaired. *Id.* (*citing Gershwin Publishing Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971).

Sater cites *Nelson-Salabes, Inc. v. Morningside Development, LLC*, 284 F.2d 505, 514 (4th Cir. 2002), for the proposition that proof of ownership of an entity alone is sufficient to establish both the right and ability to supervise and a direct financial interest. Pl.'s Response at 6  7. Because both of the Individual Wingard Defendants had the right and ability to supervise, Sater argues they should be found vicariously liable or, at the least, the court should find there are genuine issues of material fact regarding their right and ability to control the allegedly infringing activity and their financial interest therein. *Id.* at 7.The Individual Wingard Defendants did not reply to Sater's responsive arguments.

Based on the above recommendation that Sater's motion for summary judgment as to copyright infringement be denied, the undersigned recommends that the Individual

Wingard Defendants' motion to be dismissed in their individual capacity be denied. The undersigned agrees that, should Wingard be found liable for copyright infringement, the potential individual liability of the Individual Wingard Defendants may be evaluated pursuant to the standards set out in *Morningside Development*.

C.    Motion for Default Judgment as to The Lowrey Group, Inc. [Entry #128]

In its June 2009 amended complaint, Sater added The Lowrey Group, Inc. ("TLG") and its president, Robert Lowrey, as Defendants in its ongoing copyright infringement suit. *See* Am. Compl. ¶¶ 7 8, 11 20 [Entry #34]. Sater alleged that TLG and Lowrey infringed on some of the house plans at issue by working with the Wingard Defendants on plans for homes built in Grande Dunes that, in large part, "copied" Sater's propriety house plans. *Id.* In particular, Sater claims Defendants TLG and Lowrey were involved in plans for the following homes, which purportedly infringed Plans 6910 and 6653: Bal Harbor, lot 39; Cadiz, lot 12; Palermo, lot 38; Member's Club, lot 167; Calais, lot 15; Calais, lot 26; and Riviera, lot 49. *See* Pl.'s Default J. Mem., at 3 [Entry #128]; Aff. of Robert C. Lowrey, ¶ 5 (filed in opposition to Pl.'s Mot. for Summ. J.) [Entry #142-2].

On July 10, 2009, Lowrey and TLG answered Sater's amended complaint. [Entry #52, #53.] After being advised that corporate parties could not proceed pro se [Entry #82], the court granted Sater's motion to strike the answer of TLG [Entry #115], and the Clerk of Court entered default as to TLG on July 12, 2010 [Entry #116]. TLG has not moved or otherwise sought to be relieved from the entry of default.

24

On November 5, 2010, Sater filed its Motion for Final Default Judgment Against TLG [Entry #128].  Sater argues that its infringement claims are uncontested by TLG because its answer was stricken, and that it has established liability as to TLG. Particularly, it submits that it has showed both elements of infringement: "'(1) ownership of a valid copyright, and (2) copying of the constituent elements of the work that are original.'" Pl.'s Default J. Mem. at 3 (*quoting Feist Publ'n, Inc. v. Rural Telephone Serv.*, 499 U.S. 340, 361 (1991)).

Borrowing from the detailed discussion of liability in infringement actions above and the evidence submitted by Sater through the affidavit of its president, the undersigned agrees that Sater has presented sufficient evidence to satisfy both elements of an infringement action.  The undersigned agrees with Sater that the allegations in its complaint, which are taken as admitted because TLG's answer was stricken, suffice to submit a claim for which relief may be granted, which is all that is required in establishing liability when a party has defaulted.  *See Joe Hand Promotions, Inc. v. Scott's End Zone, Inc.*, 4:10-806-TLW, 2010 WL 5137139 (D.S.C. Dec. 2, 2010) (applying Fed. R. Civ. P. 12(b)(6) analysis to plaintiff's copyright claims prior to awarding default judgment). Accordingly, the undersigned recommends default judgment as to the liability of TLG be entered.

Sater's motion also seeks the court's entry of damages against TLG.  *See* Pl.'s Mem. at 4 5.  However, the undersigned recommends that determinations regarding damages be deferred until after the trial of this entire matter on its merits.  It is

recommended that Sater's motion for summary judgment as to the liability of Lowrey individually and the Wingard Defendants be denied. Sater's claims against Lowrey individually are based on actions he took in conjunction with TLG, the architectural firm of which he is president. The Second Amended Complaint does not detail the precise infringing behavior in which Sater avers TLG and Mr. Lowrey participated. Nonetheless, Sater acknowledges that it seeks the same damages from TLG as from Lowrey individually. In Sater's memorandum in support of summary judgment as to Lowrey individually and the Wingard Defendants, it refers to its motion for final default judgment against TLG and states that "[a]ll damages that apply to Defendant Lowrey individually also apply with regards to The Lowrey Group, Inc. Accordingly, Plaintiff requests the same damages as against Mr. Lowrey, supra." Pl.'s Mem. at 22 [Entry #129  1]. Further, in its motion for final default judgment, it cites to discovery responses of Lowrey in setting out the gross profits it alleges TLG obtained from activities allegedly using Sater's designs. Pl.'s Default J. Mem. at 5 & ex. B [Entry #128, #128-2].

When a copyright owner has established liability for infringement, the owner may recover its "actual damages and any additional profits of the infringer," or statutory damages. 17 U.S.C. § 504(a). The owner may elect between these remedies "at any time before final judgment." 17 U.S.C. § 504(c)(1). Here, Sater indicates it seeks final judgment as to TLG, so it seems that Sater may have indicated its electing to receive actual damages/profits award over statutory damages as to TLG. However, because infringement claims as to the other Defendants   some of which are claims based on the

26

same acts of infringement   must be tried, the undersigned submits that the ruling as to damages against TLG should be deferred.

To award the actual damages and lost profits as to TLG at this point would be to award to Sater at least some of the same damages for the same acts as to which it still has pending claims against Lowrey individually.  Although defendants may be jointly and severally liable for damages in copyright cases, that joint-and-several responsibility for a damages award may apply to statutory damages awards and to actual damages a plaintiff has proven.  *See Morningside Dev.,* 284 F.3d at 518.  Each defendant is also responsible for damages based on its own "profits attributable to infringement."  17 U.S.C. § 504(b).  In the copyright infringement context, though, "'one defendant is not liable for the profit made by another.'" *Morningside Dev.*, 284 F.3d at 518 (*quoting MCA, Inc. v. Wilson*, 677 F.2d 180, 186 (2d Cir. 1986)).  Based on this analysis alone, then, it is not clear that Sater could recover the same profits it may establish to have been ill-gained from both TLG and Lowrey individually.  In *Morningside Development,* 284 F.3d at 518*,* the Fourth Circuit found it was error for an entity and its managing partner to be jointly and severally liable for the full amount of a judgment, including the profits.  Only when there is a specific showing that two defendants were "practical partners" in infringing activity may a court order that two separate defendants be jointly and severally responsible for each other's lost profits.  *Id.*

The damages Sater seeks from Lowrey individually may be the same damages it seeks from TLG on default.  It is possible that such determinations may never become

necessary in this matter. Nonetheless, because of the potential for overly complicating post-trial damages issues, including set-off and election of remedies, the undersigned recommends that ruling on Sater's damages as to TLG be deferred until after the entire matter is concluded on its merits. To grant specific damages at this juncture when there remains a full trial on some liability and all damages issues would likely cause confusion and not foster judicial economy.

The undersigned recommends that the court grant the portion of Sater's motion for final default judgment that seeks a judgment as to TLG's liability. The undersigned recommends the court deny the portion of the motion that seeks to have specific damages entered against TLG at this stage of the litigation, deferring damages decisions to be considered at trial.

IV.     Conclusion

For the reasons set forth herein, it is recommended that Sater's motion for summary judgment [Entry #129] be granted in part and denied in part; that the Wingard Defendants' motion for summary judgment [Entry #127] be denied; and that Sater's motion for final default judgment against Defendant The Lowrey Group [Entry #128] be granted in part and denied in part.

IT IS SO RECOMMENDED.

February 28, 2011                    Shiva V. Hodges
Florence, South Carolina            United States Magistrate Judge

28

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**